## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER YOUNG,** | : | **CIVIL NO. 1:18-CV-879** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TAMMY FERGUSON,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Christopher Young ("Young"), an inmate who was housed at all relevant times at the State Correctional Institution, Benner Township, Pennsylvania ("SCI-Benner"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1).  The remaining defendants are John Wetzel, Timothy Graham, Christopher Danison, Wilbert Matthews, and Joseph Dupont.[1]  Pending before the court is defendants' Rule 12(b) motion (Doc. 59) to dismiss.  For the reasons set forth below, the court will grant defendants' motion.

## I.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6),

---

[1] By memorandum and order dated March 30, 2020, the court granted a motion for summary judgment filed by defendants Tammy Ferguson, Daniel Myers, Bobbi Jo Salamon, Jennifer Rossman, Stefan Stessney, and David Link.  (Docs. 61, 62).

the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

2

to "raise a right to relief above the speculative level").  A claim "has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

## II.    **Allegations of the Complaint**

On five separate occasions, Young was temporarily transferred to SCI-

Benner for court appearances.  (Doc. 1 ¶¶ 16, 30, 35-36, 43).  While he was

temporarily held, he was placed in the Restricted Housing Unit ("RHU") under

Administrative Custody ("AC") status and was not released to general population.

(Id.)  Young asserts that his placement in the RHU during his temporary stays

violated his Eighth and Fourteenth Amendment rights.  (Id. at ¶ 1).

During his first visit to SCI-Benner, Young submitted an inmate request slip

complaining about his placement in the RHU.  (Id. at ¶ 18).  Defendant Danison

responded to Young's request slip and informed him that he would not be released

to general population.  (Doc. 1; Doc. 1, Ex. C).

On March 16, 2016, Young met with the Program Review Committee ("PRC")

regarding his placement in the RHU.  (Doc. 1 ¶ 19).  The PRC consisted of defendant

Graham, as well as previously terminated defendants Salamon, Rossman, and Link.

(Id.)  Young was informed by members of the PRC that it was standard procedure

to be placed in the RHU as a temporary transfer.  (Id.)  After meeting with the PRC,

Young completed an inmate request slip with concerns about his RHU placement.

(Id. at ¶ 21; Doc. 1, Ex. F).  On March 29, 2016, defendant Graham responded to

Young's request slip and stated: "You will be continued in AC status pending your return to your home facility." (Doc. 1, Ex. F).

On March 21 and 22, 2016, Young sent request slips to defendants Wetzel and Matthews to inquire as to why he was placed in the RHU and to inform them that he believed his constitutional rights were being violated. (Doc. 1 ¶¶ 20-22, 28; Doc. 1, Exs. E, G).

Young's second transfer to SCI-Benner occurred from May 5, 2016 through May 26, 2016. (Doc. 1 ¶¶ 30, 34). On May 10, 2016, Young met with the PRC, which consisted of defendant Graham, and previously terminated defendants Salamon, Rossman, Stessney, and Myers. (Id. at ¶¶ 32-33; Doc. 1, Exs. T-U).

Young's third, fourth, and fifth transfers to SCI-Benner occurred on July 14, 2016, September 20, 2016, and November 15, 2016, respectively. (Doc. 1 ¶¶ 35, 36, 43; Doc. 1, Exs. Y, 1). Young does not allege that any of the present defendants were involved in these transfers. (Id.)

Young appealed the first, fourth, and fifth PRC decisions to place him on AC status to the Office of the Chief Hearing Examiner. (Doc. 1 ¶¶ 24-27, 36-47; Doc. 1, Exs. N-O, S, Z, 3-6, 8-9). Defendant Dupont, the Chief Hearing Examiner, conducted the final reviews and dismissed Young's appeals. (Id.)

## III.   <u>Discussion</u>

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." <u>Evancho</u>, 423 F.3d at 353 (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode</u>, 845 F.2d at 1207-08; <u>see also</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  <u>Evancho</u>, 423 F.3d at 354; <u>Rode</u>, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  <u>Rode</u>, 845 F.2d at 1208.

The only reference in the complaint to defendants Wetzel, Dannison, and Matthews is that Young sent inmate request slips to them while housed at SCI-Benner.  (Doc. 1 ¶¶ 18, 20, 22, 28).  Regarding defendant Dupont, Young asserts that he was the Chief Hearing Examiner when Young appealed the first, fourth, and fifth PRC decisions to final review.  (<u>Id.</u> at ¶¶ 24-27, 36-47).  The complaint does not contain any other allegations against these defendants.  (<u>See</u> Doc. 1).  With respect to defendant Graham, Young avers that he participated in the PRC hearings during his first and second visits to SCI-Benner and that defendant Graham responded to an inmate request slip.  (<u>Id.</u> at ¶¶ 19, 21, 32-33).

To the extent that Young attempts to hold defendants Wetzel, Danison, Matthews, Dupont, and Graham liable based on their roles in reviewing inmate request slips or appeals, this claim fails.  It has long been recognized that a state prisoner's allegation that prison officials and administrators responded

inappropriately, or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct.  See Rode, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). In accordance with the foregoing, any attempt by Young to establish liability against the defendants based upon their handling of his complaints, inmate request slips, or appeals does not support a constitutional claim.  See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005).

Young also asserts that defendant Graham participated in the PRC hearings during his first and second visits to SCI-Benner.[2]  (Id. at ¶¶ 19, 32-33).  Aside from mentioning that defendant Graham was a participant in these two PRC hearings, the complaint does not set forth any substantive allegations against defendant Graham and does not describe any specific, allegedly wrongful conduct by

---

[2]  In the March 30, 2020 memorandum and order, the court found, *inter alia*, that Young failed to exhaust any claims regarding his second placement in the RHU and failed to establish that his first placement in the RHU violated his constitutional rights.  (Docs. 61, 62).

defendant Graham.  There are no factual allegations from which the court could plausibly infer that defendant Graham was involved in any alleged unconstitutional conduct.  Accordingly, the claims against defendant Graham will be dismissed.

## IV.   <u>Leave to Amend</u>

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint.  <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set forth above, Young's claims against defendants are legally and factually flawed and thus incurable.  Therefore, the court concludes that curative amendment would be futile.

## V.   <u>Conclusion</u>

The court will grant defendants' motion (Doc. 59) to dismiss.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       April 16, 2020